Bryan Charles Tipp
Torrance L. Coburn
TIPP COBURN SCHANDELSON PC
P.O. Box 3778
2200 Brooks Street
Missoula, MT 59806-3778
Telephone: (406) 549-5186
Facsimile: (406) 721-1892
bryan@tcsattorneys.com
torrance@tcsattorneys.com

Jeffrey B. Tuttle
Tuttle & Associates
8158 164th Avenue NE
Redmond, WA 98052
Telephone:  (425) 881-9100
Facsimile:  (425) 881-9144
jeff@tuttleinjurylaw.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| EILEEN M. KATICA, an individual,<br><br>Plaintiff,<br>vs.<br><br>ALLSTATE FIRE & CASUALTY INSURANCE COMPANY, an Illinois corporation and foreign insurance company doing business in the State of Montana,<br><br>Defendant. | CV 16-150-M-DLC<br><br><br>PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANT'S MOTION TO COMPEL MEDICAL EXAMINATION |

COMES NOW the Plaintiff Eileen M. Katica ("Ms. Katica" or "Katica"), by

and through her counsel, and files the following brief in response to the Defendant

1

Allstate Fire & Casualty Insurance Company's ("Allstate") *Motion to Compel Medical Examination.* While Ms. Katica does not object to submitting to a medical exam by Dr. Margorie Eskay-Auerbach ("Dr. Auerbach"), Ms. Katica contends that pursuant to Fed. R. Civ. P. 35 the examination must be subject to an order specifying, *inter alia*, the manner, conditions and scope of the examination. Furthermore, the conditions and scope of the examination proposed by Ms. Katica are appropriate and neither present an undue burden on Allstate, nor do they impede a fair and proper exam of Ms. Katica. Therefore, for the reasons set forth below, Ms. Katica respectfully requests that this Court deny Allstate the relief requested in its *Motion*, and instead order the medical examination performed by Dr. Auerbach be subject to the conditions and scope proposed by Ms. Katica in the proposed Order, attached hereto as Exhibit 1.

## BRIEF

## INTRODUCTION

Fed. R. Civ. P. 35 provides that a court may, if good cause appears, order a party whose physical condition is in controversy to submit to a suitable examiner. It further provides that in the event such an exam is ordered, the court set forth the manner, conditions and scope of the examination. Inherent in this Rule is that the manner, scope and conditions of such an exam be set so as to protect the rights of Ms. Katica, and so that Ms. Katica not be subjected to an intrusive exam that seeks

information which has no bearing on the matters at issue in the case before the court.

The manner, conditions and scope of the examination proposed by Ms. Katica are not burdensome and do not impede a fair and proper examination of Ms. Katica. Instead, they simply protect Ms. Katica's rights while allowing Allstate to secure information necessary for its defenses in this matter. The manner, conditions and scope proposed by Ms. Katica were initially proposed via email on May 31, 2018 as part of a draft stipulation, which is attached as Exhibit 2. At this time, it was Plaintiff's understanding that the Defendant was seeking an examination pursuant to Fed. R. Civ. P. 35. (See email contained in Exhibit 2).

However, after providing this draft stipulation, Defendant's counsel informed Plaintiff's counsel that the Defendant proposed the examination be taken pursuant to the policy language, rather than pursuant to Fed. R. Civ. P. 35. (See Dkt. 31-8). At this point, Plaintiff's counsel agreed that the examination could take place pursuant to the policy language. (See Exhibit 3, June 27, 2018 email). However, it was still necessary that the parties agree on conditions and scope of the examination; therefore, Plaintiff's counsel set forth the proposals concerning the manner, conditions and scope of the examination. (Id.) These proposals mirrored the proposals set forth in Plaintiff's proposed draft stipulation discussed above.

Based upon Allstate's current motion and the authority cited, it appears Allstate is now proposing that the examination is now being taken pursuant to Fed. R. Civ. P. 35 and the requirements set forth therein. Therefore, Ms. Katica feels it is appropriate that the manner, conditions and scope of the examination comply with those set forth in the initial draft stipulation (attached as Exhibit 2). Additionally, it appears that the following conditions proposed by Ms. Katica in the original draft stipulation remain at issue (with the items Ms. Katica understands that Allstate objects to being underlined and italicized):

- *Plaintiff will submit to all requested examinations (within reason), but will not, as this is not an examination for purposes of receiving medical treatment, fill out any medical history, personal or other such forms*. She will, however, verbally answer any questions (including questions on forms used by the examiner) posed by the doctor to the best of her ability. There is no physician/patient relationship created in this exam and the information obtained by and through the examination is not subject to HIPAA regulations or compliance.
- Defendant's counsel will provide the CR 35 examiner with any records, medical billing or other information, required. Plaintiff has no obligation to

provide the CR 35 examiner with any records whatsoever.[1]  The CR 35 examiner will not conduct his/her review of the records during the CR 35 examination.

- *The scope of the exam will be a standard examination without x-rays or other invasive diagnostics*, and shall not exceed a reasonable length of time.

- *A person retained by the undersigned counsel for Plaintiff shall be in attendance at all phases of said examination and may make an audiotape recording of the entire examination.  Said person shall not interfere with the examination unless the scope of the examination violates the terms of this order*.  Plaintiff will not pay any fee associated with the examination.

- *The CR 35 examiner shall confine his/her questions to current symptoms and the injuries claimed in the case.  The CR 35 examiner will be allowed to inquire about the injury causing event but the inquiry may not go beyond medically relevant questions*.

In discussing what constitutes the appropriate manner, conditions and scope of the requested medical examination of Ms. Katica, it must be noted that Allstate did not present any proposed modifications to the draft stipulation presented by

---

[1] It appears that Allstate has conceded that Ms. Katica and her counsel have no obligation to provide Dr. Auerbach any records.  (See Dkt. 31, page 3: "Allstate's counsel agrees that their office will furnish Dr. Auerbach with documents, including medical records, for Dr. Auerbach's review.")  However, it appears that Allstate was confused by language set forth in one of Ms. Katica's counsel's emails, and believed that counsel was arguing that Ms. Katica would not have to provide any information, particularly verbal information, to Dr. Auerbach.  This was not what was intended by Ms. Katica's counsel.  Instead, counsel intended to convey that Ms. Katica and her counsel have no obligation to provide Dr. Auerbach any records or other documentation.

Ms. Katica.  In fact, the July 11, 2018 letter from WellCare IME now relies upon to set the manner, conditions and scope of the requested examination (Dkt. 31-4) was not provided to Ms. Katica prior to it being received as an exhibit to this pending motion.  Prior to the above-referenced letter from WellCare IME, the sole reference to the scope proposed by Allstate was set forth in it's July 2, 2018 letter (Dkt. 31-1), wherein Allstate proposed that Ms. Katica be "subjected to an orthopedic examination by an orthopedic physician."  This was the "scope" proposed by Allstate, and arguably this "scope" is now removed from the current "scope" proposed by Allstate, as the July 11, 2018 letter from WellCare IME identifies both orthopedic surgery and forensic medicine as specialties of the Dr. Auerbach and neglects to state that Dr. Auerbach will only be performing an orthopedic examination of Ms. Katica.

   It is also important to note, as a preliminary matter, that Allstate either misunderstood, or has mischaracterized, the conditions that Ms. Katica's counsel previously proposed in the June 27, 2018 email (previously provided by Defendant as Dkt. 31-3, with a more readable copy provided and attached as Exhibit 3). Particularly, a comparison of conditions #2, 3 and 5 as set forth in Exhibit 3 with those set forth by Allstate on page 3 of its brief (Dkt. 31) demonstrate the following differences:  (1) Allstate removed language from proposed condition #2 wherein Ms. Katica agreed that she would verbally answer questions concerning

her medical history; (2) Allstate mistakenly read condition # 3 to state that Ms. Katica would not provide information at the exam, when what was conveyed was that documentation – i.e. the medical records and bills and any other documentation – would be provided to Dr. Auerbach by Allstate; and (3) in condition #5, Plaintiff proposed that as Allstate was requiring the examination be performed pursuant to the insurance policy language that Allstate would not seek a separate CR 35 exam.

     Furthermore, it should be noted that the conditions that Ms. Katica previously proposed in the June 27, 2018 email were proposed in relation to an exam that was to be performed pursuant to the insurance policy and were proposed by her because Allstate had previously consented to such conditions[2] regarding medical examinations conducted pursuant to the policy language.  While Allstate argues that it did not previously consent to such conditions because its representatives never received the letter setting forth the conditions (See Dkt. 31 pg. 16-17), the facts demonstrate otherwise.  In addition to the letter being sent to the adjuster, the letter was faxed to, and received by, Allstate's representative on July 29, 2014.  (See Exhibit 4).

    //

    //

---

[2] With the exception of condition #5 set forth in Exhibit 3.

## **ARGUMENT**

Rule 35 of the Federal Rules of Civil Procedure requires a motion and order that specify "the time, place, manner, conditions and scope of the examination." An examination pursuant to CR 35 "is part of an objective search for the truth." Wright & Miller, *Federal Practice and Procedure: Civil*, Sec. 2239 at 697. At all times, the "Court exercises full discretion in regulating and controlling physical and mental examinations." *The Italia*, 27 F.Supp. 785, 786 (E.D.N.Y. 1939). The importance of the court's analysis in exercising its discretion is confirmed by the United Supreme Court's decision in *Schlagenhauf v. Holder*, wherein the Court was critical of the fact that there was "no compliance with Rule 35's requirements that the trial judge delineate the 'conditions, and scope' of the examinations," and made clear that this requirement in the rule was not a mere formality:

> Here the examinations were ordered in very broad, general terms. The internal medicine examination might for example, at the instance of the movant or its recommended physician extend to such things as blood tests, electrocardiograms, gastro-intestinal and other X-ray examinations. It is hard to conceive how some of these could be relevant under any possible theory of the case.

379 U.S. 104, 121, n.16, 85 S. Ct. 234, n. 16 (1964).

//

//

The Montana Supreme Court shares the United States Supreme Court's beliefs, stating:

> The historical debate concerning ordered examinations and the individual's personal sanctity indicates that the good cause requirement of Rule 35, M.R.Civ.P., examinations is not to be taken lightly. Moreover, good cause for an examination may not constitute good cause for the specific examination requested by a defendant. A court must scrutinize a request for a proposed examination on a case-by-case basis. The time, place, manner, conditions and scope of an examination must be balanced with the plaintiff's inalienable rights. A court is further required to consider the availability of other means through which a defendant can obtain the information necessary to an informed defense.

*Simms v. Montana Eighteenth Judicial District Court*, 2003 MT 89, ¶33, 315 Mont. 135, 68 P.3d 678.

It is in this light that Allstate's Motion must be considered.

### I. Allstate has failed to specify the scope of the proposed examination.

As discussed above, it is imperative that the Defendant properly specify the scope of its proposed examination. Without the Defendant providing specifics concerning the scope of the examination, this Court is denied the opportunity to properly scrutinize the request and balance the request against the Plaintiff's inalienable rights. *Simms*, 2003 MT at ¶33.

In this case, Allstate has entirely failed to specify the scope of the proposed examination. At best, Allstate has "defined" the scope as an "orthopedic examination". However, compelling an "orthopedic examination" without

defining the scope could have a variety of meanings, depending on the doctor performing the exam and what she has been requested to do. Neither Allstate's Motion nor the July 11, 2018 WellCare IME letter (Dkt. 31-4) provide guidance as to what an "orthopedic examination" constitutes, and essentially amounts to seeking a "blank check" concerning Dr. Auerbach's examination of Ms. Katica. This constitutes a failure by Allstate to specify the scope of the proposed examination. This same conclusion was reached by the United States Supreme Court in *Schlagenhauf*, where the Court set aside an order entered by the district court providing examinations in broad, general medical specialties, including internal medicine, ophthalmology, neurology, and psychiatry. 379 U.S. at 165-66.

Given that Allstate has failed to specify the scope of the proposed examination, thereby denying this Court the opportunity to evaluate and scrutinize its request as required by Fed.R.Civ.P. 35, this Court could properly deny Allstate's Motion to Compel Ms. Katica to submit to a CR 35 examination in its entirety. However, in order to facilitate complete and proper discovery in this matter, Ms. Katica proposes a compromise: that this Court order the scope she proposed for the examination, as set forth in Exhibit 1, paragraphs 1, 2, 6 and 8.

Such an order adequately protects both parties' interests, as it allows Dr. Auerbach to perform an orthopedic examination concerning the injuries, symptoms and conditions she sustained in the accidents at issue in this matter and those areas

of her body that she injured in the accidents at issue.  As such, Allstate will be able to engage an expert to provide a report concerning the injuries Ms. Katica claims in this matter and whether those injuries complained of were caused by the accidents at issue.  On the flip-side, Ms. Katica's proposed order does not subject her to examination of areas of her body to which she is not claiming injuries associated with the accidents at issue, which are irrelevant to this case.  Therefore, Ms. Katica's proposed order effectively balances Allstate's need for information necessary to an informed defense with Ms. Katica's personal sanctity.

II. **Ms. Katica should not be required to fill out any medical or personal history forms, as such information is available to Allstate and Dr. Auerbach through other means.**

In determining the manner, conditions and scope of a Rule 35 examination, a court is required to consider the availability of other means through which a defendant can obtain the information necessary to an informed defense. *Simms*, 2003 MT at ¶33.  In the present case, Ms. Katica has provided Allstate with over 1,200 pages of medical records, with Allstate acquiring thousands of pages of additional records through subpoenas issued to Ms. Katica's medical care providers.  As can be gleaned from Allstate's submissions to this Court, Allstate has acquired medical records which contain and set forth Ms. Katica's medical history.  As such, Allstate and Dr. Auerbach have means available other than

11

requiring Ms. Katica to fill out additional medical history forms, namely her actual medical records as well as the medical and personal history forms provided therein.

Additionally, Ms. Katica's proposed order provides that Dr. Auerbach can seek additional history through verbal questions, should Dr. Auerbach feel it is necessary. The order proposed by Ms. Katica provides Allstate and Dr. Auerbach with sufficient mechanisms to acquire the history necessary to perform a thorough medical examination of Ms. Katica, while balancing Ms. Katica's right not to be subjected to an overly burdensome examination.

As indicated by the July 11, 2018 WellCare IME letter (Dkt. 31-4), Allstate and Dr. Auerbach expect the actual examination to last four hours. On top of this, Dr. Auerbach proposes that Ms. Katica appear one hour prior to the actual start time for the examination, in order to complete forms. This would require Ms. Katica submit to five hours of examination, which would pose an issue for Ms. Katica. Ms. Katica's difficulties in this area have been previously acknowledged by counsel for the parties in discussing the setting of Ms. Katica's deposition. (See Exhibit 5, email chain between counsel). Moreover, it is difficult to envision requiring Ms. Katica to fill out forms which take an hour to complete without at the same time requiring Ms. Katica to provide irrelevant information well outside the bounds of appropriate discovery. Given that Allstate's needs are to be balanced with Ms. Katica's rights and interests, and Allstate has other, less

intrusive means to provide Dr. Auerbach with Ms. Katica's history, this Court should deny Allstate's request that Ms. Katica fill out any medical history, personal or other forms, and instead issue the order proposed by Ms. Katica.

### III. Allowing Ms. Katica to audio record the examination and to have a third party witness present will not adversely effect the proceedings and will appropriately protect Ms. Katica's interests.

As discussed previously, this Court exercises full discretion in regulating physical examinations, and in issuing its order regulating examinations it is charged with balancing Ms. Katica's personal sanctity and inalienable rights with Allstate's need for information necessary to an informed defense. *The Italia*, 27 F.Supp. 785, 786 (E.D.N.Y. 1939); *Simms*, 2003 MT at ¶33.

As has been recognized by other courts, audio recordings of medical examinations are allowable under Fed.R.Civ.P 35. See *Underwood v. Fitzgerald*, 229 F.R.D. 548 (M.D. Tenn. 2005); *Zabkowicz v. West Bend Co.*, 585 F. Supp. 635 (E.D. Wis. 1984). As recognized by the court in *Underwood*, "an audio taping of the proceedings would not be unduly intrusive." 229 F.R.D. at 550. Furthermore, the use of a recording device ensures that no inappropriate questions are asked and helps the parties recall exactly what occurred at the examination. *Id*.

Ms. Katica audio recorded Allstate's previous medical examination, and that recording has been provided to Allstate, providing both parties with an accurate transcript of the proceedings. Allowing Ms. Katica to audio record Dr. Auerbach's

medical examination will provide the same accurate transcript to both parties. Furthermore, it will ensure that whatever order this Court issues concerning Dr. Auerbach's examination will be complied with, and that Ms. Katica is not subjected to inappropriate examinations outside the scope of this Court's order.

Similarly, in addition to *Mohr v. District Court of Fourth Judicial Dist. In and For Missoula* – cited by Allstate in its brief – at least one other court has ruled that it is appropriate for a plaintiff to have a third party witness to the examination in order to protect her rights and interests. In ruling that a plaintiff was entitled to have a third party present at the medical examination, the court in *Zabkowicz v. West Bend Co.*, focused on the fact that the doctor performing the medical examination was the defendant's expert and was not sufficiently impartial. 585 F. Supp. 635, 636. Therefore, allowing the plaintiff to have a third party witness the examination was warranted. *Id*.

For these reasons, this Court should allow Ms. Katica to audio record the examination and to have a third party witness present.

## **CONCLUSION**

For the reasons set forth above, the Plaintiff Eileen Katica respectfully requests this Court order the medical examination performed by Dr. Auerbach be subject to the conditions and scope proposed by Ms. Katica in the proposed Order, attached hereto as Exhibit 1.

DATED this 27th day of July, 2018.

                TIPP COBURN SCHANDELSON PC

                By: /s/ Torrance L. Coburn
                Bryan Charles Tipp
                Torrance L. Coburn
                2200 Brooks Street
                P.O. Box 3778
                Missoula, MT 59806-3778

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(d)(2)(E), I certify that this Brief is printed with proportionately spaced Times New Roman text typeface of 14 points; is double-spaced; and the word count, calculated by Microsoft Word is 3,287 words long, excluding the Caption, Certificate of Service and Certificate of Compliance.

                TIPP COBURN SCHANDELSON PC

                By: /s/ Torrance L. Coburn
                Bryan Charles Tipp
                Torrance L. Coburn

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 27th day of July, 2018, a copy of the foregoing document was served on the following persons by the following means:

 1        CM/ECF

1. Stephanie A. Oblander
   Smith Oblander & Meade, PC


By: Torrance L. Coburn